UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| OHIO INDEPENDENT AUTOMOBILE DEALERS ASSOCIATION, INC.<br>2040 Brice Road, Suite 110<br>Reynoldsburg, Ohio 43068 | : : : : : | CASE NO.:  2:18-cv-00973<br><br>JUDGE: |
| and | : : | |
| GLORY AUTO SALES LTD<br>8560 E Main St<br>Reynoldsburg, Ohio 43068 | : : : : | MAGISTRATE: |
| and | : : | |
| SHOEMAKER A-1 AUTO INC. D/B/A<br>A1 AUTO SALES<br>100 S Illinois Ave<br>Mansfield, Ohio 44905 | : : : : : | |
| and | : : | |
| 3G AUTO GROUP LLC<br>9055 Ottawa Rd<br>Columbus Grove, Ohio 45830 | : : : : : | |
| PLAINTIFFS | : : | |
| v. | : : | **COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF** |
| John Born, Director<br>Ohio Department of Public Safety<br>1970 West Broad Street<br>Columbus, Ohio 43223 | : : : : : | |
| and | : : | |
| Don Petit, Registrar<br>Ohio Bureau of Motor Vehicles<br>1970 West Broad Street<br>Columbus, Ohio 43223 | : : : : | |

Page 1 of 13

|  | : |
| --- | --- |
| DEFENDANTS. | : |
|  | : |

## PARTIES

1. Plaintiff, Ohio Independent Automobile Dealers Association, Inc.,("OIADA") is a not-for-profit trade association representing the interests of used vehicle dealers in the state of Ohio with a principal place of business at 2040 Brice Rd, Suite 110, Reynoldsburg, Ohio 43068.

2. Plaintiff, Glory Auto Sales Ltd ("Glory"), is an Ohio limited liability company which holds a used vehicle dealer's license and maintains a principal place of business at 8560 E. Main St., Reynoldsburg, Ohio 43068.

3. Plaintiff, Shoemakers A-1 Auto Inc. d/b/a A1 Auto Sales, ("A1 Auto") is an Ohio Corporation which holds a used vehicle dealer's license and maintains a principal place of business at 100 South Illinois Avenue, Mansfield, Ohio 44905.

4. Plaintiff 3G Auto Group, LLC ("3G Auto") is an Ohio Limited Liability Company which holds a used vehicle dealer's license and maintains a principal place of business at 9055 Ottawa Rd, Columbus Grove, Ohio 45830.

5. Defendant, John Born ("Born"), is the current director of the Ohio Department of Public Safety ("DPS"), the division which oversees the Bureau of Motor Vehicles ("BMV").

6. Defendant, Don Petit ("Petit"), is the Registrar of the BMV.

7. The BMV is the sole regulatory agency in the state of Ohio in charge of issuing, transferring, and destroying vehicle titles.

8. The principal offices of both Defendants are 1970 West Broad Street, Columbus, Ohio 43223.

## JURISDICTION

9. The acts complained of herein occurred throughout the State of Ohio.

10. Jurisdiction is appropriate under 28 USC 1331 as the controversy involves a federal question.

11. Justice would be best served if this Court heard any and all supplemental claims along with the federal claims.

## VENUE

11. Venue is appropriate in the Southern District of Ohio as all Defendants reside in the District.

## GENERAL BACKGROUND FACTS

12. The BMV is the sole regulatory agency in charge of issuing, transferring, and destroying titles to vehicles in the state of Ohio.

13. The BMV is under the authority and direction of Born, Director of DPS.

14. The BMV is a state agency housed within the DPS.

15. The BMV maintains a computer software system to record all title issuances, transfers, and destructions.

16. Each time a title is issued, transferred, or destroyed, a notation is made in the BMV's computer system. The notation includes the seller's name and address, buyer's name and address, mileage at time of transfer, sale price, and brand status.

17. On or about April 2017, the BMV updated its computer software systems to the ATPS 3 system ("ATPS 3").

18. ATPS 3 pulls information from the federal National Vehicle Title Information System database ("NMVTIS").

19. NMVTIS was created to provide states with a mechanism to instantly check all state vehicle recording systems to verify the accuracy and legitimacy of the information presented to states at the time of transfer.

20. NMVTIS reports provide vehicle history such as insurance claim, junk, and salvage information.

21. Since April2017,  the ATPS 3 has provided the BMV with the insurance claim, junk, and salvage information contained in NMVTIS reports.

22. Since April 2017, the BMV has used this information to brand vehicle titles as salvage.

23. Ohio defines a vehicle as salvage "when the vehicle is dismantled, destroyed, or changed in such manner that it loses its character as a vehicle, or changed in such a manner that it is not the vehicle described in the certificate of title." R.C. 4505.11(A).

24. The BMV issued a directive to all clerks of court on April 27, 2017 directing them on how to use the NMVTIS report to brand titles as salvage. See Attachment A.

25. The BMV is using the NMVTIS report to brand a vehicle title as salvage without conducting any investigation whatsoever into the accuracy of the information.

26. The BMV is using the NMVTIS report to brand a vehicle title as salvage despite the fact that the vehicle has received an un-branded title several times since the incident reported to NMVTIS triggered the salvage brand.

27. The BMV has not complied with the Ohio Revised Code and provided public notice of any rule or policy change allowing BMV the right to use the NMVTIS information to brand vehicle titles as salvage.

28. Often, the information provided from NMVTIS to the BMV relates to an incident that occurred several years and several titles ago.

29. The BMV, in a public hearing on or around July 12, 2018, admitted that the NMVTIS reports have a propensity to be inaccurate.

30. The BMV has not created an established appeal procedure to allow for a neutral third-party review and determination whether the salvage brand is accurate. Instead, the BMV has established an ineffective help line. See Attachment B.

31. The BMV is only utilizing the NMVTIS report at the time a title is transferred.

32. Owners are only aware after a vehicle has been sold and it processes the title paperwork that a vehicle is deemed salvage.

33. Vehicles have been freely driven on Ohio and the nation's roadways for years without an issue are now being deemed salvage due to the BMV's sole reliance on NMVTIS reports.

34. Once a vehicle and its title are deemed to be salvage, the vehicle cannot be driven on Ohio's roadways pursuant to R.C. 4505.11(G).

35. The owner of the salvage vehicle title must obtain a rebuilt salvage title prior to legally operating the vehicle on Ohio's roadways.

36. In order to obtain a rebuilt salvage title the owner must present receipts to the State Highway Patrol of all repairs done to make the vehicle safe. R.C. 4505.1(E).

37. In many cases, owners are unable to obtain the receipts or have any knowledge of the repairs done to make the vehicle safe as the incident that triggered the NMVTIS salvage brand was several years ago and more than one owner ago.

38. Without the receipts necessary to obtain a rebuilt salvage title, and thus the ability to legally operate the vehicle on Ohio roadways, owners are left with an expensive piece of metal that cannot be driven on Ohio's roadways and cannot be resold at retail.

39. Licensed dealers who buy vehicles effected by this policy are left without any economical use for the vehicle since they are prohibited by law from reselling the vehicle.

40. Defendants did not introduce new rules, regulations, statements, or any other form of public notice prior to using the NMVTIS reports to brand vehicle title's as salvage.

41. Defendants recognized that they are without the right to implement a new rule, regulation, or policy without complying with the Administrative Procedure Act, R.C. 119.

42. Defendants published proposed rules on July 30, 2018 to permit the actions outlined above.

### FACTS SPECIFIC TO PLAINTIFF GLORY

43. Glory has a niche in buying, repair, and reselling hail damage vehicles.

44. The hail damaged vehicles that Glory purchases have clean, un-branded, titles at the time of purchase.

45. The hail damaged vehicles typically only have damage to the cosmetic components of the vehicle.

46. Glory repairs the cosmetic components of the vehicle and then resells it to the public.

47. Glory has engaged in this practice for over three years without an issue.

48. On multiple occasions since April 2017, Glory has been notified at the time it transfers the clean title to a purchaser that the title has been deemed salvage by the BMV.

49. The vehicle is being branded as salvage solely due to the cosmetic damage to the vehicle.

50. The vehicle being branded as salvage is not dismantled, destroyed, or changed in such a manner it loses its character as a vehicle.

51. The Glory vehicles deemed salvage by the BMV are mechanically sound.

52. The Glory vehicles deemed salvage by the BMV have been driven on roadways safely for years.

53. The Glory vehicles deemed salvage by the BMV are as described in the certificate of title provide to Glory at the time of purchase.

54. The Glory vehicles deemed salvage by the BMV are unable to be resold at retail and cannot be driven on Ohio's roadways.

55. The Glory vehicles deemed salvage by the BMV have caused Glory thousands of dollars in damages.

56. There are potentially hundreds of cars sold with clean titles by Glory that, when the customer sells the vehicle, will be deemed as salvage.

57. The BMV's retroactive change in policy has created an incalculable liability to Glory for the vehicles currently on the roadway with what the BMV deems as salvage titles, purchasers of Glory unaware of the vehicle's status.

### **FACTS SPECIFIC TO PLAINTIFF A1 AUTO**

58. A1 Auto from time to time purchases used vehicles from auctions with clean titles and need some minor body repairs before being listed for resale.

59. In 2018, A1 Auto purchased a Ford Expedition for $18,727 from Copart Auto Auction.

60. At the time of purchase, the Expedition did not have any accidents reported to AutoCheck or Carfax.

61. AutoCheck and Carfax are two nationally recognized vehicle history reports.

62. At the time of purchase, Copart provided A1 Auto with a clean, un-branded, Ohio title.

63. The Expedition needed body work before it was ready for retail sales.

64. A1 Auto replaced the fender, bumper, headlight, and grill and listed the vehicle for resale.

65. A1 Auto sold the Expedition at retail to a consumer in the state of Ohio.

66. As part of the consumer's purchase of the Expedition, he provided a trade-in to pay for the Expedition.

67. At the time A1 Auto attempted to transfer the title to the consumer, it was notified by the BMV that the vehicle's title would be branded as salvaged.

68. Upon learning it was a salvage title, A1 Auto was forced to buy back the vehicle from the consumer.

69. A1 Auto spent $8,000 to recover the consumer's trade in and return it to the consumer.

70. Due to Defendants actions of branding the title as salvage, A1 Auto lost over $14,000 on the Expedition.

71. In 2018, A1 Auto purchased a 2018 Dodge Caravan ("Caravan") with a clean title for $11,777 at a Co-Part sale.

72. The Caravan had been in an accident, hitting a deer, and needed a new fender, headlight, hood, and bumper cover.

73. After repairing the Caravan, A1 Auto attempted to transfer title to the Caravan, but at transfer was informed by Defendants that it was salvage.

74. A1 Auto is unable to resell the Caravan in the state of Ohio.

75. A1 Auto has been damaged an unknown amount not to exceed $16,000 as a direct result of Defendants' actions related to the Caravan.

76. There are potentially hundreds of cars sold with clean titles by A1 that, when the customer sells the vehicle, will be deemed as salvage.

77. Defendants' retroactive change in policy has created an incalculable liability to A1 for the vehicles currently on the roadway with, what the BMV deems salvage titles, purchasers of A1 unaware of the vehicle's status.

78. A1 purchased a motorcycle in 2010 with a clean title.

79. A1 owned the motorcycle from 2010 - 2018.

80. During A1's ownership of the motorcycle, it was not in any accident or any flood and no insurance claims were made.

81. In 2018, A1 attempted to sell the motorcycle.

82. A1 found a buyer and went to the BMV to transfer title to the buyer.

83. A1 was notified at that time by Defendants that the motorcycle's title had been reported as flood salvage to NMVTIS relating to an incident reported in 2013.

84. The BMV would only issue a salvage title to the vehicle until the NMVTIS report was updated to remove the flood salvage notation.

85. A1 has been unable to get NMVTIS to remove this erroneous report.

86. A1 has been unable to get the BMV to issue a new clean, unbranded, title to the motorcycle.

87. A1 is unable to drive, resell, or obtain a rebuilt salvage title to the motorcycle.

88. A1 has been damaged by Defendants actions in an unknown amount to exceed $10,000 as a result of branding the motorcycle title salvage.

**FACTS SPECIFIC TO PLAINTIFF 3G AUTO**

89. 3G Auto buys and sells vehicles in the $8,000 - $10,000 price range.

90. 3G Auto purchases its vehicles from a variety of sources including out of state auctions.

91. In the last year, 3G Auto purchased clean, un-branded, title vehicles from Michigan and Indiana.

92. The vehicles 3G Auto purchases from out of state have been operated on highways in those states without a problem for months if not years.

93. The vehicles 3G Auto purchases from out of state need minor repairs similar to what is expected of a used vehicle.

94. In order to resell the out of state vehicles in Ohio, 3G Auto must obtain an Ohio certificate of title.

95. On at least three different instances when 3G Auto attempted to obtain an Ohio certificate of title, it was notified by Defendants that the vehicle was salvage.

96. 3G Auto has taken a financial loss on each and every vehicle as a direct result of Defendants' actions in branding the title as salvage.

97. 3G Auto is prohibited from re-selling the vehicles or doing anything else of significant economic value with the vehicle to offset the loss caused as a direct result of Defendants' actions.

98. There are potentially hundreds of cars sold with clean titles by 3G that, when the customer sells the vehicle, will be deemed as salvage.

99. The BMV's retroactive change in policy has created an incalculable liability to 3G for the vehicles currently on the roadway with, what the BMV deems salvage titles, purchasers of 3G unaware of the vehicle's status.

**COUNT 1: DECLARATORY JUDGMENT VIOLATION OF R.C. 119.01, et seq. RENDERS DEFENDANTS ACTIONS INVALID AND UNENFORCEABLE**

100. Plaintiffs incorporate Paragraphs 1 - 99 herein by reference, as if fully rewritten.

101. State law requires any agency who adopts, amends or rescinds a rule to, at a minimum, provide public notice under R.C. 119.03.

102. A "rule" is defined as "any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule. 'Rule' does not include any internal management rule of an agency unless the internal management rule affects private rights and does not include any guidelines adopted pursuant to section 3301.0714."

103. Defendants are a state agency, within the meaning of R.C. 119, with sole authority to control vehicle titles in Ohio.

104. Defendants provided no notice whatsoever of its intent to brand vehicle titles as salvage solely based upon the information contained in NMVTIS.

105. Defendants' actions have been applied uniformly across the state of Ohio.

106. Defendants' actions have affected Plaintiffs' rights to vehicles.

107. Defendants' actions have damaged Plaintiffs thousands of dollars per vehicle affected by Defendants' policy.

108. Plaintiffs, as a result of Defendants' actions, are left with an economically valueless vehicle.

109. Defendants have failed to comply with R.C. 119 as to its policy for use of NMVTIS information and therefore all actions taken under this policy are invalid.

110. As a direct and proximate result of Defendants' actions, Plaintiffs have been damaged an amount to be proven at trial, not less than $200,000.

**COUNT 2: VIOLATION OF U.S. CONST: REGULATORY TAKING**

111. Plaintiffs incorporate Paragraphs 1 - 110 herein by reference, as if fully rewritten.

112. 42 U.S.C. 1983 provides a private right of action for all persons who have had been deprived of his/her constitutional rights.

113. Plaintiffs' rights to all economically viable use of its vehicles and to physically use the vehicles has been taken as a direct result of Defendants actions.

114. Defendants' policy removes all beneficial use of vehicles valueless once it issues a salvage vehicle title.

115. Defendants' policy frustrates all property rights of Plaintiffs in the vehicles.

116. Defendants have not paid Plaintiffs for the property taken by Defendants' policy.

117. Defendants have violated Plaintiffs' Fifth Amendment Rights.

118. Defendants, as a direct result of its policy, have cause damage to Plaintiff in an amount to be proven at trial, but not less than $200,000.

**COUNT 3: VIOLATION OF U.S. CONST.: DEPRIVATION WITHOUT DUE PROCESS**

119. Plaintiffs incorporate Paragraphs 1 - 118 herein by reference, as if fully rewritten.

120. 42 U.S.C. 1983 provides a private right of action for all persons who have been deprived of his/her constitutional right of due process.

121. Plaintiffs have a right to possess and retain value for its vehicles and the beneficial use of enjoyment of the vehicle.

122. Defendants' actions have deprived Plaintiffs of those rights as the vehicles retain no value or beneficial use.

123. Defendants' actions remove Plaintiffs' rights in the vehicles without oversight of any neutral third party.

124. Defendants' actions, single handedly and without oversight, removed Plaintiffs' rights in the vehicles.

125. As a result of Defendants' actions, Plaintiffs have been denied its right in property without due process in violation of the United States Constitution.

126. As a direct result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $200,000.

**COUNT 4: VIOLATION OF OHIO CONSTITUTION II.28**

127. Plaintiffs incorporate Paragraphs 1 - 126 herein by reference, as if fully rewritten.

128. Ohio's Constitution prohibits the legislator from instituting a retroactive law.

129. Defendants actions, as applied, are instituting a retroactive law.

130. Defendants are branding a vehicle as salvage as the result of actions that took place many years ago before the policy outline above was in place.

131. Defendants have no authority to enforce the current policy on occurrences that pre-date the policy.

132. Defendants' actions violate the Ohio Constitution's prohibition on passing or implementing retroactive laws.

133. Plaintiffs have been left with no economically viable use for vehicles as the result of Defendants actions.

134. As a direct result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $200,000.

## COUNT 5: CONVERSION

135. Plaintiffs incorporate Paragraphs 1 - 134 herein by reference, as if fully rewritten.

136. Plaintiffs, at the time its purchased vehicles with clean, un-branded titles, had an ownership and possessory interest in the clean titled vehicle.

137. Defendants took away this right by unilaterally branding the title as salvaged, thus wrongfully exercising control over Plaintiffs' personal property

138. Defendants action of branding the title as salvage permanently removed the right to clean title of the vehicle.

139. Since April 2017, Plaintiffs have demanded that Defendants modify its system of branding vehicles as salvage without notice to Plaintiffs, but Defendants have refused.

140. As a direct result of Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $200,000.

## COUNT 6:  INJUNCTIVE RELIEF

141.    Plaintiffs incorporate Paragraphs 1-140 herein by reference, as if fully rewritten.

142.    Since April 2017, the BMV has been using NMVTIS reports to brand a vehicle as salvage: (1) without conducting any investigation into the accuracy of the information, (2) without providing public notice of any rule or policy change, and (3) without complying with the procedures set forth in R.C. 119 et seq.

143.    As a result of Defendants' actions, Plaintiffs have suffered substantial and irreparable injury for which there is no adequate remedy at law.

144. Plaintiffs are likely to succeed on the merits in this matter, issuance of a preliminary and permanent injunction would not cause substantial harm, and the public interest is served by holding state agencies accountable for following notice requirements and other law regarding rule and policy change.

145. Plaintiffs are entitled to an order preliminarily and permanently enjoining Defendants from enforcing any policy effecting Plaintiffs without following the public notice requirements of the Revised Code.

WHEREFORE, Plaintiffs respectfully request:

A) A declaratory judgment, declaring Defendants policy invalid and unenforceable for failure to abide by the public notice requirements of the Revised Code;

B) Preliminarily and permanently enjoin Defendants from enforcing any policy effecting Plaintiffs without following the public notice requirements of the Revised Code;

C) Actual damage for Defendants' unconstitutional conduct in an amount to be proven at trial, but not less than $200,000;

D) Its attorneys fees for brining this action, pursuant to 49 U.S.C. 1998 (b);

E) Its costs of brining this action; and

F) Any other relief as the Court deems appropriate.

/s/Allison L. Harrison
Allison L. Harrison (0086324)
Allison L. Harrison Law, LLC
100 E Broad St, Suite 320
Columbus, Ohio 43215
Ph: (614)440-1395
Fax: (614)308-8133
aharrison@alharrisonlaw.com

/s/Joseph C. Pickens
Joseph C. Pickens (0076239)
David H. Thomas (0071492)
Taft Stettinius & Hollister LLP

                65 E State St, Suite 1000
                Columbus, OH 43215
                Ph: 614-221-2838
                Fax: 614-221-4012
                jpickens@taftlaw.com
                dthomas@taftlaw.com



**OHIO DEPARTMENT OF PUBLIC SAFETY**
SAFETY · SERVICE · PROTECTION

- Bureau of Motor Vehicles
- Emergency Management Agency
- Emergency Medical Services
- Office of Criminal Justice Services
- Ohio Homeland Security
- Ohio State Highway Patrol

John R. Kasich, Governor
John Born, Director
Donald J. Petit
*Registrar*

Bureau of Motor Vehicles
1970 West Broad Street
P.O. Box 16520
Columbus, Ohio 43216-6520
(614) 752-7600
www.bmv.ohio.gov

**TO:** ALL CLERK OF COURTS TITLE OFFICES

**FROM:** TERESA A. JOHNSON, CHIEF, TITLE SUPPORT SECTION

**DATE:** MARCH 7, 2018

**SUBJECT:** TITLE BROADCAST 18-0307
NMVTIS – Salvage Dispositions (Also refer to Title Broadcast 17-0427)

The Bureau of Motor Vehicles has been in communication with representatives from Auto Auctions, IAA, AAMVA, DPS Legal Services, and ATPS-IT to address various concerns regarding the salvage message(s) (*See note) that displays when a customer is attempting to obtain or transfer a vehicle title. The information being displayed through ATPS is obtained from NMVTIS as a result of reporting done in accordance with a rule from the Department of Justice whereby insurance companies and/or junk yards, salvage yards, and auctions (reporting entities) are required to report on junk and salvage vehicles. In some cases, these reports have been filed in error.

When a customer believes the reported salvage information indicated on the title is inaccurate, the Clerk should advise the customer to contact the BMV Title Support Section at **614-752-7671** for assistance. After the customer requests assistance, the Title Support section will reach out to the reporting entity for resolution. Regardless of the outcome, the Title Support section will keep in contact with the customer throughout the process and advise them of any necessary actions.

*Note: Junk/Salvage Information and Insurance Information are reported to NMVTIS independently of one another; therefore, on the Clerk's NMVTIS Details screen, information *may* be displayed in two separate boxes depending on the situation (see screenshot below). If there is salvage information displayed in either box, then a salvage title should be issued. **Reminder: If a customer disputes this salvage information, then the Clerk should refer them to the BMV Title Support Section.**



If you have any questions or concerns, please call the BMV Title Support section at
1-800-686-1587 and select option 3.

**Mission Statement**
*"to save lives, reduce injuries and economic loss, to administer Ohio's motor vehicle laws and to preserve the safety and well being of all citizens with the most cost-effective and service-oriented methods available."*



**OHIO DEPARTMENT OF PUBLIC SAFETY**
SAFETY · SERVICE · PROTECTION

- Bureau of Motor Vehicles
- Emergency Management Agency
- Emergency Medical Services
- Office of Criminal Justice Services
- Ohio Homeland Security
- Ohio State Highway Patrol



John R. Kasich, Governor
John Born, Director
Donald J. Petit
*Registrar*

Bureau of Motor Vehicles
1970 West Broad Street
P.O. Box 16520
Columbus, Ohio 43216-6520
(614) 752-7600
www.bmv.ohio.gov

**TO:** ALL CLERKS OF COURTS TITLE OFFICES

**FROM:** TERESA A. JOHNSON, CHIEF, TITLE SUPPORT SECTION

**DATE:** APRIL 27, 2017

**SUBJECT:** TITLE BROADCAST 17-0427
NMVTIS Junk Clarification

This broadcast 17-0427 replaces and rescinds Title Broadcast 17-0322.

The Department of Public Safety has again been in contact with representatives from AAMVA regarding the new information being received through the NMVTIS process and displayed to you in the "Junk and Salvage Information" section during ATPS title issuance. AAMVA has provided an update to clarify that not all vehicles for which information is returned in the Junk / Salvage Information portion of the NMVTIS details screen are, in fact, junk. The primary change (listed below) is that when the disposition code is null or blank, you may now issue a Salvage title (previously, you were instructed not to issue a title at all).

<u>Viewing the NMVTIS Details Portion of the ATPS Screen:</u>

When you first begin to process a title, in the upper right corner of the screen you will see the [N] icon (NMVTIS). During the title issuance process, the color of the N changes from gray to red to green. Green signifies that we have received all the data we are going to receive from NMVTIS. Once the icon has turned green, you **must** click it to view the information received in the NMVTIS Details screen.



After selecting the NMVTIS icon, the system will bring up the NMVTIS Details screen (see the following example):

"Issue Title as Salvage" when blank or null



**Mission Statement**
*"to save lives, reduce injuries and economic loss, to administer Ohio's motor vehicle laws and to preserve the safety and well being of all citizens with the most cost-effective and service-oriented methods available."*

**Ohio Department of Public Safety**
Page 2



Though all of the information presented on this screen is useful and should be taken into consideration when you are making the decision whether or not to issue a title, the portion we want to call your attention to in this broadcast is the Junk / Salvage Information block.

## Understanding the message in the Junk / Salvage Information Block:



The clarification we have received from AAMVA indicates that there are five vehicle disposition codes that could potentially be received: Scrap, Crush, Sold, Salvage, or the disposition code will be blank.

When a disposition code is received by ATPS, the system will put a corresponding message at the top of the Junk / Salvage Information screen to further assist you. When the disposition codes are Crush or Scrap, the system will present a message advising you not to issue a title. If the disposition code is

Ohio Department of Public Safety
Page 3

null or blank, the system will now present a message advising you to issue a Salvage Title. If the customer disputes this information, please direct them to contact the reporting agency and request an amendment or correction. Please refer to the chart below regarding what you will see with each different disposition code.

| Disposition Code | What you will see when you click on the icon and how to proceed |
|---|---|
| Scrap | Do not title. Vehicle is scrap. |
| Crush | Do not title. Vehicle is crushed. |
| Sold (the entire vehicle was sold, not as parts) | Sold as salvage vehicle. |
| Salvage | Sold as salvage vehicle. |
| Null or Blank | Issue a Salvage title |

Keep in mind that the system returning a message of "Sold as salvage vehicle" does not always mean that you must issue a salvage title. It's possible that a rebuilt salvage title was issued after the disposition date shown in the Junk / Salvage Information block. You should compare the date of the disposition code with the date the title document being presented to you was issued. The information received from NMVTIS should be considered as additional evidence for you to use when performing your due diligence prior to issuing the title.

## Junk Brands

Data in the Junk / Salvage Information block should not be confused with a Junk Brand. A brand is a notation placed on a vehicle record by an entity responsible in their state for issuing titles (such as a BMV or county title office).

Brands coming from the NMVTIS process will continue to be shown to you at the point of "Suspend" or "Payoff/Print". Ohio's policy on junk brands has not changed. You should not title a vehicle that has a junk brand placed on it by any other state. If the customer feels that this brand was placed on their vehicle in error, the customer must contact the reporting state, and if that state agrees to remove the junk brand in NMVTIS, then you can issue the title for the customer once NMVTIS no longer has the brand.

If you have any questions or concerns, please call Title Support at
1-800-686-1587 and select option 3